# BEFORE THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA
# WESTERN DIVISION

| | |
|---|---|
| HOLLI LUNDAHL : | |
| Plaintiffs : | CIVIL NO. **18-CV-5090-LLP** |
| v. : | DECLARATION OF HOLLI LUNDAHL IN SUPPORT OF: |
| : | **PLAINTIFF'S PARTIAL SUMMARY JUDGMENT FOR ECOA LIABILITY ON PLAINTIFF'S SECTION 504 SPECIAL CREDIT GRANT APPLICATION ONLY, i.e. 7 CFR § 3550.103(b),(c) And 12 CFR § 1002.8 And DEMAND FOR IMMEDIATE TURN OVER OF PROGRAM FUNDS TO PREVENT FURTHER INJURY** |
| JULIE GROSS in her personal capacity; LANCE LOCKWOOD in his personal capacity; CRAIG STEINLEY in his personal capacity; CBE GROUP, Inc personal capacity; CBE GROUP, Inc. SYNCHRONY BANK, and AT&T : | |
| Defendants : | |

## DECLARATION UNDER THE PENALTY OF PERJURY
## PURSUANT TO 28 U.S.C. § 1746

I, HOLLI LUNDAHL, declare and depose as follows:

1. I am the Plaintiff in this action and have personal knowledge of the facts set forth herein.

2. On July 8, 2019, the federal defendants added another claim to my statutory and common law lawsuit by filing my original application for a special credit section 504 grant to replace a failed septic system as the government's doc. no. 58-3. This grant application was amended by my Doc. no. 60-1, Page 40 of 59 PageID #: 857 showing a (household of four.).

1

3. Title 7 CFR § 3550.103(b),(c) sets for the Eligibility requirements for a section 504 grant. Title 12 CFR § 1002.8 (3), (4) also provides express authorization to grant credit under Special Purpose Credit Programs and provides that Creditor liability will be imposed if the applicant meets the eligibility requirements under a special purpose credit program and is declined credit by the Creditor.

4. The qualifications for granting a section 504 Grant require that :
   (a) I be a minimum of 62 years of age (Doc. 60-1 pp 37-39 of 59 Page ID #'s: 854 - 856;
   (b) My household of four (Doc. 60-1, P 40 of 59 Page ID# 857) must have an adjusted area median income of less than 30% (Doc. 60-1 pp 37-39 of 59 PageID #'s: 854 - 856); or very low income pursuant to **7 CFR 3550.103 (c)** (Doc. 60-1, Page 39 of 59 PageID #: 856) which for Rapid City, South Dakota is between $21,200 and $35,300 per annum (Doc. 60-1, Page 46 of 59 ID #: 863);
   (c) I may also qualify for a full section 504 grant if my total debt to income is greater than 46% – if I dont meet less than the 30% or very low income requirements (Doc. 60-1, Page 38 of 59 Page ID #: 855);
   (d) My adjusted income for both myself and another disabled household member entitles me to a deduction of an additional $400 per person (Doc. 60-1, pp 42 -43 of 59 Page ID #: 859-860) for a total of $800 which I deduct from my annual household income.
   (e) My total adjusted household income is $19,996 (Doc. 60-1, Page 44 of 59 PageID #: 861);
   (f) I have an unexpired leasehold interest in the subject property of at least 5 years (Doc. 60-1, Page 35 of 59 PageID #: 852 ); and
   (g) The property be located in a rural area.

5. I am over the age of 62.

6. My household of four has an annual income that is below both the 30% area median income AND the very low area median income for Rapid City SD, those ranges being between $21,200 and $35,300 annually. My household adjusted annual income is $19,996.

7. My total debt to income is 68% which also allows me to qualify for the full section 504 grant amount of $7500.

8. On July 3, 2019, I submitted an application for a section 504 grant to the only RHS person entitled to take said grant, Defendant Lance Lockwood. Also submitted to Lockwood was mine and my sister's public assistance grant letters from the SSA, and a pay stub for the last 4 weeks of part time income that I recently acquired. No other income

documentation applied to my household.

9. I did not sign an authorization for any credit to be pulled on me because the section 504 grant **does not authorize a credit pull.** (Doc. 60-1, Page 33 of 59 PageID #: 850).

10. I did provide LOCKWOOD with the last 2 months of my bank account records and I did authorize LOCKWOOD to verify my income going into my bank account. I also provided LOCKWOOD with a snapshot of mine and Marti's joint credit card account showing that we had placed a purchase on a septic tank and with exhibit "1" attached hereto that provided that failed septic systems required priority processing under the section 504 grant program.

11. As a final submission, I provided LOCKWOOD with three bids to reconstruct a new septic system on the property as exhibits "2", "3" and "4" attached hereto.

12. LOCKWOOD had a duty to place my application on priority processing and execute a grant contract with me.

13. Instead, **LOCKWOOD intentionally entered an adverse letter claiming incomplete application FOR A DIRECT 502 LOAN . . when I was not applying for a loan.** See exhibit "5" attached hereto.

14. When LOCKWOOD issued a false letter indicating incomplete application on a SECTION 502 LOAN **when I was seeking a section 504 grant AS A QUALIFIED APPLICANT** AND HAD SUPPLIED ALL OF THE DOCUMENTATION IN SUPPORT OF OBTAINING THAT GRANT ON AN EXPEDITED BASIS, **LOCKWOOD violated 12 CFR § 202.2(f) of the ECOA** which mandates that on a claimed incomplete application, "the creditor shall exercise reasonable diligence in obtaining such information" necessary to decide whether to extend credit." Exhibit "6" attached hereto at pg 4, i.e. Errico v. Pacific Capital Bank, NA, 753 F. Supp. 2d 1034 - Dist. Court, ND California 2010, where the federal judge concluded that **this code is violated when the creditor's denial of credit based on an incomplete application, is a false pretext to delay granting credit.**

In Moore v. U.S. Department of Agriculture, 993 F.2d 1222 (5th Cir. 1993),

the 5th circuit held that a district court cannot dismiss a complaint based on a defense of incomplete application under the ECOA **where the Plaintiff asserts that they turned over all documents applicable to their application and the creditor unilaterally halts the credit granting process. . .** See exhibit "7" attached hereto.

15. When LOCKWOOD issued a false letter denying credit allegedly based on incomplete application, **LOCKWOOD violated 15 U.S.C. § 1691(a)(3)**, which provides:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction —
> (3) because the applicant has in good faith exercised any right under this chapter.

16. A violation of 15 U.S.C. § 1691(a)(3) is perceived as denying credit for retaliatory or extortive purposes. See Owens v. Magee Finance Serv. of Bogalusa, Inc., 476 F. Supp. 758 - Dist. Court, ED Louisiana 1979, attached hereto as exhibit "8". **In *Owens*, the plaintiff was extended credit only after agreeing to abandon her TILA claims in a pending lawsuit that had arisen from a previous credit transaction with the defendant.** Another lawsuit stating the same § 1691(a)(3) claim is Bryson v. Bank of New York, 584 F. Supp. 1306 (S.D.N.Y. 1984) exhibit "9" attached hereto. Here, Bryson claimed **that his attempts to ascertain the accuracy of the Bank's disclosure,** and thereby to enforce his rights under the Act, **caused the Bank to deny him credit.** The Bryson Court found that the denial of credit stated a claim under § 701 of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, which forbids a creditor from discriminating against consumers because of, *inter alia,* the consumer's good faith exercise of their rights under the ECOA 15 U.S.C. § 1691(a) (3).. . because Bryson had the right to challenge the proper implementation of any right under the Federal Consumer Protection Act.

17. With respect to my section 504 grant application, LOCKWOOD unlawfully denied me credit because I refused the drop my lawsuit against LOCKWOOD for prior ECOA, FHA, BIVENS and FRCA violations as applied to a previous direct housing loan application I made and in which LOCKWOOD and his BOSS defendant Julie Gross unlawfully

denied that loan application. I was clearly qualified to receive the section 504 grant on a priority basis and LOCKWOOD has indefinitely delayed the credit process for the grant under false pretext in violation of both 15 U.S.C. § 1691(a) (3) and 12 CFR § 202.2(f).

18. Title 12 C.F.R. § 202.4(b). Discouragement, provides in material part:

> **(b) Discouragement.** A creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would **discourage on a prohibited basis** a reasonable person from making or pursuing an application.

**LOCKWOOD violated 12 C.F.R. § 202.4(b)** by making a written statement that was patently false to wit: that I was applying for a section 502 direct loan on property to which I was a qualified LESSEE recipient for a section 504 grant. and for the additional discriminatory purpose of discouraging me from pursuing my application for this special credit program.

19. The ECOA permits me to seek both declaratory and equitable relief, see 15 U.S. Code § 1691e(c); actual damages § 1691e(a) and punitive damages in the amount of $10,000 per violation. § 1691e(b). **Equitable relief is justified when there is a continued risk of injury.** See Shapiro v. Cadman Towers, Inc, 51 F.3d 328, 331 (2d Cir. 2005) (continued risk of injury constitutes irreparable harm and justifies equitable relief to abate that injury); 12 CFR § 1691e(h); United States v. Mitchell, 580 F.2d 789, 792-93 (5th Cir. 1978); United States v. Long, 537 F.2d 1151, 1154 (4th Cir. 1975), cert. denied, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976). **I am entitled to immediate equitable relief by way of permanent injunction requiring LOCKWOOD to dispense qualified grant funds of $7500 so that I may replace my failed septic system which represents a continuing risk of injury to me and my household** by not only depriving us of necessary waste facilities, **but also by exposing us to the black mold** that collects in the building as a result of the repeated septic overflows into the residence. The USA has already determined that failed septic systems justify emergency relief under 7 CFR 3550.104 and exhibit "10" attached, Parris v. Pappas, 844 F. Supp. 2d 271 - Dist. Court, D. Connecticut 2012. See also Gresham v. Windrush Partners, Ltd., 730 F.2d 1417, 1424 (11th Cir.), cert. den. sub nom. Windrush Partners,

Ltd. v. Metro Fair Housing Services, 469 U.S. 882, 105 S.Ct. 249, 83 L.Ed.2d 187 (1984) ("when housing discrimination is shown it is reasonable to presume that irreparable injury flows from the discrimination, and injunction may be requested as a matter of right from the Plaintiff." *Id.* At 1423.);   Fifth Circuit in Grant v. Imperial Motors, Inc., 539 F.2d 506, 510 (5th Cir. 1976)(**"[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability ;** unless one of the defenses provided in the Act is applicable to this transaction,  **the Court must award the successful litigant-consumer the statutory penalties.)**

20.   In private actions under the ECOA, a lender is liable to an aggrieved applicant for actual damages suffered in an individual capacity.   15 U.S.C. § 1691e(a).   See Fifth Circuit: Fischl v. General Motors Acceptance Corp., 708 F.2d 143, 148 (5th Cir. 1983) (Actual damages may include out-of-pocket monetary losses, injury to credit reputation, and mental anguish, humiliation or embarrassment).

21.   If my actual damages allegation of discrimination under the ECOA as applied to denial of my section 504 grant only (and for which I seek $1 million) -  are disputed,  I am entitled to a jury resolving my actual damages dispute.  **"It is peculiarly and rightfully the province of the jury  to determine a defendant's true reasons for the adverse action in a jury demand case and to settle damages."**   Frazier v. Rominger, 27 F.3d at 832 (citing St. Mary's Honor Center v. Hicks, 509 U.S. at 508).   To comply with my jury demand, a jury trial to determine my actual damages may take years.

23.   However, the statutory punitive penalty for  ECOA violations as it applies to my individual status and  my section 504 grant application only. . . is statutorily set at $10,000. I make an immediate  demand for turn over of  this money as well as the prices to pay for a replacement septic system is $4000 for the tank (refer back to credit card snapshot served on LOCKWOOD) and roughly anywhere between $21,000 to $23,000 to lay the septic system.  See exhibits "2" and "3" attached for these bids.   Note that the bid at exhibit "4" attached i.e. upwards of $12,000,  does not include the removal of trees or dirt  from the projected septic

field and which would increase the amount of that bid to the range of the other bids.

22. There are emergent conditions requiring immediate issuance of an injunction to turn over program grant "repair" funds for the septic system replacement in the amount of $7,500, plus the set statutory penalty fee of $10,000. I f orthwith demand that said funds in the amount of $17,500 be turned over to me immediately to make the required health and safety issue repairs.

I certify that the foregoing facts and laws and the attached documents are true and correct, under penalty of perjury, executed this 21st day of July, 2019.

_____
Holli Lundahl

Certificate of Service
The clerk of the court is directed to serve the foregoing document on the parties through the court's ECF filing system.