UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| HOLLI LUNDAHL,<br><br>Plaintiff,<br><br>vs.<br><br>JULIE GROSS, IN HER OFFICIAL AND PERSONAL CAPACITIES AS DIRECTOR FOR THE STATE OF SOUTH DAKOTA OFFICE OF RURAL DEVELOPMENT; STATE OF SOUTH DAKOTA OFFICE OF RURAL DEVELOPMENT, CRAIG STEINLEY, LANCE LOCKWOOD, IN HIS OFFICIAL AND PERSONAL CAPACITIES AS A LOAN SPECIALIST FOR THE STATE OF SOUTH DAKOTA OFFICE OF RURAL DEVELOPMENT;<br><br>Defendants. | 5:18-CV-05090-LLP<br><br><br>ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANT CRAIG STEINLEY'S MOTION TO DISMISS |

Plaintiff, Holli Lundahl, filed a *pro se* civil rights lawsuit claiming violations of: (1) the Equal Credit Opportunity Act, (2) section 504 of the Rehabilitation Act of 1973, (3) 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment Equal Protection Clause, (4) *Ex parte Young*; and (5) the Fair Housing Act. Doc. 1 at 1.

Defendants, Julie Gross, State of South Dakota Office of Rural Development[1] and Lance Lockwood filed an acknowledgment of service on February 12, 2019. Doc. 30. On April 12, 2019,

---

[1] Plaintiff lists the State of South Dakota Office of Rural Development as a defendant in her caption. Doc. 1 at 1. The federal defendants, Gross, State of South Dakota Office of Rural Development, and Lockwood, assume that Plaintiff intended to sue the United States Department of Agriculture (USDA) because her allegations focus on her federal loan application and deal with federal defendants. *See* Doc. 38 at 1.

Gross, Lockwood, and USDA[2] filed a motion to dismiss and a memorandum in support. Docs. 38 and 39.

On May 7, 2019, 85 days after the federal defendants were served and after they had moved to dismiss, Plaintiff filed a "Corrected Verified First Amended Complaint," Doc. 42. The federal defendants moved to strike Plaintiff's "Corrected Verified First Amended Complaint." Doc. 47. Thereafter, Plaintiff moved for an extension to respond to the federal defendants' motion to strike and their motion to dismiss. Doc. 50. At this time, defendant Craig Steinley had not been served. This Court ordered Plaintiff's response to the federal defendants' motion to dismiss as well as their motion to strike to be filed on or before June 17, 2019. Doc. 51. Plaintiff only responded to the federal defendants' motion to strike. Doc. 53.

Defendant, Craig Steinley was not served until July 5, 2019. Doc. 74. Steinley filed a motion to dismiss and memorandum in support. Docs. 86 and 87. Plaintiff opposes Steinley's motion to dismiss. Doc. 98. Pending before this Court are various motions. *See* Docs. 38, 46, 47, 63, 70, 73, 75, 76, 79, 86, 92, 99.[3]

## FACTUAL BACKGROUND

---

[2] Defendants Gross, Lockwood, and the USDA are referred to as the "federal defendants" when they are acting together.

[3] *See* Doc. 38 (Motion to Dismiss filed by the federal defendants); Doc. 46 (Motion to Seal Exhibits filed by Plaintiff); Doc. 47 (Motion to Strike filed by the federal defendants); Doc. 63 (Motion for Partial Summary Judgment filed by Plaintiff); Doc. 70 (Motion for Joinder filed by Plaintiff); Doc. 73 ("Motion for Order Directing Clerk to Immediately Issue a Summons" filed by Plaintiff); Doc. 75 (Motion for Order Directing the Clerk to Immediately Issue Summonses for CBE Group, Inc., Synchrony Bank, and AT&T" filed by Plaintiff); Doc. 76 ("Emergency Petition for Permission to File Amended Complaint" filed by Plaintiff); Doc. 79 ("Emergency Declaration Demanding That This Court Strike Order on Motion for Permanent Injunction" filed by Plaintiff); Doc. 86 (Motion to Dismiss filed by defendant Craig Steinley); Doc. 92 ("Emergency Motion to Strike the Federal Defendant's Untimely and Non-Responsive Answers[.]" filed by Plaintiff); Doc. 99 ("Motion to Amend and File Verified Second Amended Complaint to Conform the Pleadings to the Evidence Submitted to [t]his Court to Date" filed by Plaintiff).

Plaintiff alleges that her and her sister, Marti Lundahl, were judicially declared disabled under the Social Security Act. Doc. 1 at 2. In 2017, Plaintiff claims she submitted an application to the local USDA Rural Development Office, which would help the Plaintiff participate in a home loan program. *Id.* Plaintiff was allegedly told that there were some medical debts that needed to be cleared up in her application, but was encouraged to apply again when the issues were resolved. *Id.*

In the meantime, Plaintiff and her sister applied to seven banks in South Dakota to obtain a loan but were rejected by each bank. *Id.* at 3. They then turned to the USDA's section 502 Direct Loan program. *Id.* Plaintiff claims that defendant Lockwood did not accept some of her grants when he calculated the initial loan eligibility figure. *Id.* Plaintiff attached all relevant documents to her complaint. *See* Docs. 1-1 and 1-2. The initial loan certificate of eligibility letter in, (Exhibit 7 of Doc. 1-1) states that "[c]hanges in any qualification variable (property location, real estate taxes, insurance, loan term/rate etc.) may impact the applicant's loan qualification amount." Doc. 1-1 at 25.

Plaintiff believes that Lockwood's failure to accept some of the grants was discriminatory. Doc. 1 at 3. Plaintiff claims that after a professional inspection report was paid for, Lockwood ordered an appraisal to occur in October of 2018. *Id.* at 5. Plaintiff believes Lockwood was lying when he said he did not have the name of the appraiser at this time. *Id.* Plaintiff sought different housing assistance grants that were to expire on November 21, 2018. *Id.* Plaintiff called Lockwood and Gross and "other housing officers in South Dakota and in Washington DC seeking to obtain the name of the appraiser appointed by the USDA to appraise the home – in order to obtain a commitment date before November 21, 2018" so she wouldn't lose her other funding. *Id.*

On November 14, 2018, Plaintiff received the name of the appraiser, defendant Craig Steinley. *Id.* Plaintiff claims she called Steinley repeatedly on November 15th and 16th. *Id.* Steinley allegedly called Plaintiff back on November 19, 2018 and said he would have his report done on the morning of November 21, 2018. *Id.* Plaintiff claims Steinley did not perform when he said he would and Plaintiff sued him in state court. *Id.* at 6.

The Funding Commitment and Notification of Loan Closing letter is dated November 30, 2018 (Doc. 1-1 at 27) and indicated that the approved rate for the Section 502 Direct Loan was approved for $107, 904.00 "subject to a down payment of $72,096.00" *Id.* Plaintiff alleges that because she sued Steinley, Lockwood dropped her funding amount from $126,500 to 107,904.00. *Id.*; *see* Doc. 1-1 at 25, 27. When Plaintiff confronted Lockwood on the change in the amount she alleges that Lockwood responded that the change was due to a miscalculation of property taxes. *Id.* at 7. Plaintiff believes this was the second act of discrimination. *Id.* at 6-7. Plaintiff asserts that these actions have caused her and her sister to come up with an extra $18,000 to secure the home. *Id.* She claims Lockwood "reported to HOLLI that he would not close the escrow and secure the remaining two grants until HOLLI necessarily obtained the $18,000+ additional extorted funds." *Id.* at 7. Plaintiff states that she obtained the extra money from a third party and claims that Lockwood made himself unavailable to her. *Id.* at 7.

The USDA sent Plaintiff a letter on December 7, 2018, which indicated that an administrative review was conducted on her file due to her ambiguous and conflicting information in her application documents. Doc. 1-1 at 29. The letter states "[t]he Agency will not issue loan closing instructions until it has reviewed the above information and is satisfied that each co-applicant has been forthcoming with full, complete and supportable information verifying your assets, debts, income and repayment ability, among other regulatory criteria." *Id.* at 30. The letter

4

has been redacted in some areas, but it shows that the information the USDA is requesting is a list of pending lawsuits (amount in dispute or requested relief), complete information of Plaintiff's credit report, any judgments that are outstanding against Plaintiff or her sister, any involvement in businesses (managerial, ownership, or membership), and confirming that Plaintiff has filed tax returns in the last three years. *Id.*

> Plaintiff claims she responded on December 9, 2018 and
>
> assert[ed] that neither her or Marti had any pending money judgments against them in any of their self[-]initiated civil lawsuits, that Holli and Marti's litigation activities were not material to their present poor status and qualifying for the referenced section 502 direct loan, that the property was not at risk for being attached for any [of] Holli or Marti's litigation activities because the title to the property was to be in the name of the Lundahl-Telford Trust, a special needs trust organized under the laws of the Social Security Administration for SSI funded households[.]

Doc. 1 at 8-9.

The USDA's letter states that if Plaintiff does not respond with the proper material in 15 days, Plaintiff's application will be withdrawn, but she can still reapply. Doc. 1-1 at 30. Later, the seller of the home that Plaintiff and her sister were trying to secure allegedly backed out of the sale because he had two mortgages to pay. Doc. 1 at 8. Plaintiff blames this on Gross and Lockwood for failure to close the sale. *Id.* Now, Plaintiff "believes that GROSS will then intentionally deplete the funding amounts to another borrower to put it beyond HOLLI and MARTI's reach." Doc. 1 at 9. Plaintiff requests an immediate injunction, proper funding of $138,000, a penalty of $110,000 for failing to close the escrow, and other remedies. *Id.* at 11-12.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Inferences are construed in favor of the non-moving party. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)).

*Pro se* complaints, "'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). Civil rights and *pro se* complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this standard, a *pro se* complaint must "allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The court is not required to "supply additional facts, nor will [it] construct a legal theory . . . that assumes facts that have not been pleaded." *Id.* (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008); *see also Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

## LEGAL ANALYSIS

### I.    Motion to Strike Amended Complaint

Federal defendants filed a motion to strike the Plaintiff's "Corrected Verified First Amended Complaint[.]" Docket 47.[4] Plaintiff opposes this motion. Docket 53. In their motion to strike, federal defendants argue that the "Corrected Verified First Amended Complaint" is untimely, filed without their agreement or leave, that the complaint does not allege new facts or claims, and that it is futile. Docket 48 at 2. Plaintiff argues that her "Corrected Verified First Amended Complaint" should remain because: (1) she filed an extension motion in Doc. 41, (2) other federal courts have found good cause in other cases, (3) the defendants were not prejudiced and she did not need to reach an agreement with them, and (4) her new complaint is meritorious. Docket 53 at 1-2.

It is clear that Plaintiff's "Corrected Verified First Amended Complaint" was untimely filed. The federal defendants acknowledged service of Plaintiff's initial complaint (Doc. 1) on February 12, 2019. Doc. 30. Under Federal Rule of Civil Procedure Rule 15 allows for a party to amend its pleading 21 days after serving it, or with "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)(A-B). Plaintiff filed her "Corrected Verified First Amended Complaint" (Doc. 42) on May 7, 2019, which amounts to 85 days after the federal defendants were served. Plaintiff did not have written consent from the federal defendants to file an amended complaint and did not have leave from this Court.

Next, Plaintiff argues that she filed an extension motion in Doc. 41. Doc. 53 at 1. However, Doc. 41 was filed in error and this Court cannot consider something that is filed in

---

[4] This motion was filed before defendant Steinley had been served.

7

error.[5] Plaintiff asserts that because she filed an extension motion in Doc. 41, then Federal Rule of Civil Procedure 6(b) falls within her favor. Rule 6(b) states:

> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed.R.Civ.P. 6(b)(1)(A-B).

Rule 6(b) is inapplicable in this case because Doc. 41, Plaintiff's alleged motion for extension, was filed in error. Even if this Court could consider Doc. 41, it was not made before the original timing constraints had expired (21 days after service). Further, 6(b)(1)(B) does not grant Plaintiff the relief she seeks. Doc. 41 cannot be considered a motion by this Court. Again, even if the Court could consider Doc. 41, Plaintiff does not assert arguments of excusable neglect as to why she did not move to amend past the deadline. Accordingly, the federal defendants' motion to strike (Doc. 47) the "Corrected Verified First Amended Complaint" is granted.

## II. Craig Steinley's Motion to Dismiss

Defendant, Craig Steinley was not served until August 5, 2019. Docket 74. Steinley filed a motion to dismiss and memorandum in support. Docs. 86 and 87. In his memorandum of support Steinley argues that the Plaintiff's claims should be dismissed for failure to serve Steinley within "120 days as required by the Federal Rules of Civil Procedure, under Fed.R.Civ.P. 12(b), for failure to state a claim . . . and under this Court's prior Order in *Noble v. Am. Nat'l Prop. & Cas. Ins. Co.*, 297 F. Supp. 3d 998 (D.S.D. 2018) . . . [and] for failure to comply with the Court's vexatious litigant injunction." Doc. 87 at 1.

---

[5] Doc. 41 was titled "Plaintiff's Verified First Amended Complaint," four days later, Plaintiff filed a "Plaintiff's *Corrected* Verified First Amended Complaint." *See* Docs. 41 and 42 (emphasis added) (Doc. 41 notes that it was filed in error).

Steinley asserts that this lawsuit was commenced against him on December 27, 2018, because he was originally named as a defendant in the complaint. *Id.* Summonses were issued for Steinley on February 6, 2019 (Docket 21) and on July 31, 2019 (Docket 68). Steinley claims he was served with the Plaintiffs "Corrected Verified First Amended Complaint" on August 5, 2019, 221 days after the lawsuit commenced. Doc. 74.

Plaintiff claims that she did not untimely serve Steinley because when this Court granted her extension of time to respond to the federal defendants motion to dismiss all parties were notified that her original complaint was "MOOTED." Doc. 98 at 2. Plaintiff claims "[i]t is black letter law that the filing of an Amended Complaint MOOTS a motion to dismiss. *Id.* Plaintiff believes that the "Corrected Verified First Amended Complaint" became the operative complaint and that Steinley was timely served. *Id.*

Steinley was served with the complaint 221 days after the lawsuit commenced. Plaintiff's motion for an extension was captioned, "PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANTS MOTION TO DISMISS PLAINTIFF'S MOOT COMPLAINT, REPLACED BY A CORRECTED FIRST AMENDED COMPLAINT[.]" Doc. 43. In Doc. 44, this Court granted Plaintiff's "motion for an extension of time to respond to Defendants' motion to dismiss." Doc. 44. When the Court granted Plaintiff an extension to respond, it did not adopt the rationale or caption of the Plaintiff's motion. The Order simply gave Plaintiff more time to respond to the federal defendants' motions. Thus, defendant Steniely was untimely served.

However, even if a defendant is untimely served, if a plaintiff shows good cause for their failure to service the defendant, the court must extend time for service. Federal Rule of Civil Procedure Rule 4(m) provides that:

if a defendant is not served within [120] days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). This means that if the court finds there is good cause for plaintiffs' failure to serve defendants, the court "*shall* extend the time for service." *Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996). If no good cause is shown, "the court still *may* extend the time for service rather than dismiss the case without prejudice." *Id.* (citing *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995)).

### A. Good Cause

Rule 4(m) does not define good cause, and courts have not given conclusive meaning to the phrase. *Kurka v. Iowa Cty.*, 628 F.3d 953, 957 (8th Cir. 2010) (citations omitted). Generally, good cause is likely to be found when:

> [1] the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, [2] the defendant has evaded service of the process or engaged in misleading conduct, [3] the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or [4] the plaintiff is proceeding *pro se* or in forma pauperis.

*Id.* (citation omitted). A plaintiff's status as a *pro se* litigant, however, does not equate to good cause. *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986) ("*pro se* litigants are not excused from compliance with substantive and procedural law.").

Here, the Plaintiff is proceeding *pro se* but has proven to be an experienced *pro se* litigant.[6] The Plaintiff's failure to serve Steinley was unrelated to third-party conduct, Steinley did not evade service, and the Plaintiff did not diligently try to serve Steinely, as she served him

---

[6] Plaintiff has filed five other lawsuits within the District of South Dakota under Holli Lundahl or her aliases, Holli Telford or Hollie Telford. *See* 5:19-CV-05071-JLV; 5:17-CV-05069-LLP; 5:17-CV-05042-JLV; 5:17-CV-05088; and 3:16-CV-03033-RAL.

221 days after filing her complaint. This Court finds there is not a sufficient basis to show good cause for Plaintiff's failure to serve Steinley.

**B. Excusable Neglect**

Even if a plaintiff failed to show good cause for their failure to serve defendants, a plaintiff could still receive a discretionary extension of time by showing excusable neglect. *Kurka*, 628 F.3d at 957. Excusable neglect is "an elastic concept that empowers courts to provide relief where a party's failure to meet a deadline is caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 959 (internal quotation omitted) (citation omitted). When determining whether neglect is excusable, there are four important factors: "(1) the possibility of prejudice to the defendant, (2) the length of the delay and the potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the party's reasonable control, and (4) whether the party acted in good faith." *Id.* "These factors do not bear equal weight as the reason for delay is generally a key factor in the analysis." *Id.* The court evaluates the totality of the circumstances when determining excusable neglect. *Id.*

First, "because the judicial preference for adjudication on the merits, which goes to the fundamental fairness of the adjudicatory process, is implicated here, the district court must weigh the effect on the party requesting the extension against the prejudice to the defendant." *Kurka*, 628 F.3d at 959. Here, dismissal would dismiss all claims against defendant Steinley. Although Steinley would have benefitted from being served process within the 120-day time frame, the harm to Plaintiff is greater than the prejudice to Steinley because it would keep Plaintiff from pursuing her claims. Based on these circumstances, this factor weighs in favor of the Plaintiff.

Second, the length of the delay and its impact on judicial proceedings is substantial. The complaint was filed on December 27, 2018, and Steinley was not served until August 5, 2019.[7] In this case, 221 days passed between the time the complaint was filed and when it was served on Steinley. Courts have found much shorter delays inexcusable. *E.g., Colasante v. Wells Fargo Corp.*, 81 F. App'x 611, 613 (8th Cir. 2003) (one day); *Edwards v. Edwards*, 754 F.2d 298, 299 (8th Cir. 1985) (170 days). This factor favors Steinley.

The third factor is the reason for delay. As explained above, Plaintiff is an experienced *pro se* litigant. Summons were issued for Steinley on February 6, 2019, and July 31, 2019. Docs. 21 and 68. However, Steinely was not served until August 5, 2019. Doc. 74. Plaintiff timely served the federal defendants; this Court finds that this factor weighs in favor of Steinley.

Fourth, the Court finds evidence of lack of good faith. Plaintiff did not request additional time to serve Steinely and did not move the Court to file an amended complaint. In this case, when Plaintiff served Steinley with the "Corrected Verified First Amended Complaint" it appears to be a litigation strategy carried out by Plaintiff, or due to carelessness. This factor favors Steinley. Based on all of the factors, this court finds that Plaintiff has not shown good cause or excusable neglect for why she did not serve Steinley within 120 days. Thus, Steinley's motion to dismiss, Doc. 86, is granted.

## III.   Federal Defendants' Motion to Dismiss

The federal defendants filed a motion to dismiss and a memorandum in support on April 12, 2019. Docs. 38 and 39. The federal defendants assert the Plaintiff's complaint should be dismissed due to lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Doc. 38 at 2.

---

[7] Steinley was served with the "Corrected Verified First Amended Complaint" Doc. 42, which this Court has struck from the record for being untimely.

**A. Equal Credit Opportunity Act (ECOA)**

Plaintiff alleges violations of ECOA under 15 U.S.C. § 1691(e). Docket 1 at 12. Federal defendants claim that Plaintiff fails to state a violation under ECOA because she fails to "plead membership in a protected class . . . or that the USDA continued to approve loans for applications." Doc. 39 at 16. The Eighth Circuit has held that to establish a prima facie case for a FHA or ECOA claim the plaintiff must "demonstrate that (1) she was a member of a protected class, (2) she applied for and was qualified for a loan with the [Department], (3) the loan was rejected despite her qualifications, and (4) the [Department] continued to approve loans for applicants with similar qualifications." *Rowe v. Union Planters Bank*, 289 F.3d 533, 535 (8th Cir. 2002).

Plaintiff claims that defendant Lockwood did not accept some of her grants when he calculated the initial loan eligibility figure. Doc. 1 at 3. Plaintiff attached all relevant documents to her complaint. Exhibit 7 of Doc. 1-1 states that "[c]hanges in any qualification variable (property location, real estate taxes, insurance, loan term/rate etc.) may impact the applicant's loan qualification amount." Plaintiff believes that Lockwood's failure to accept some of the grants was discriminatory. Doc. 1 at 3.

Plaintiff attached a letter she received from Gross, which states that there are "numerous discrepancies throughout [Plaintiff's] application documents and conflicting or ambiguous information has been provided." Doc. 1-1 at 30. Gross concludes that "[t]he Agency will not issue loan closing instructions until it has reviewed the above information and is satisfied that each co-applicant has been forthcoming with full, complete and supportable information verifying your assets, debts, income and repayment ability, among other regulatory criteria." *Id.* Plaintiff

"believes that GROSS will then intentionally deplete the funding amounts to another borrower to put it beyond HOLLI and MARTI's reach." Doc. 1 at 9.

Because Plaintiff attached this letter the letter from Gross and the exhibits to her complaint, the Court must assume that all facts alleged are true. *See Rosenberg*, 56 F.3d at 36. Thus, Plaintiff fails to state a claim under ECOA for two reasons. First, she has not asserted facts to show that she is qualified to receive the loan. The letter from Gross notes discrepancies in the application process that suggest Plaintiff is not qualified for the loan. *See* Doc. 1-1 at 30. Second, Plaintiff has not asserted facts that show the USDA "continued to approve loans for applicants with similar qualifications." *See Rowe*, 289 F.3d at 535. Plaintiff states that she "believes that GROSS will then intentionally deplete the funding amounts to another borrower to put it beyond HOLLI and MARTI's reach." Doc. 1 at 9. This speculation does not amount to facts asserting that the USDA actually approved loans for other qualified individuals. Accordingly, Plaintiff has not established a prima facie case under ECOA.

Plaintiff alleges a retaliation claim under ECOA, 15 U.S.C. § 1691(a)(3). Doc. 1 at 13. Although the Eighth Circuit has not specifically addressed what a plaintiff must show to assert a prima facie case for retaliation under ECOA, this Court will adopt the test provided by the Eleventh Circuit. In *Bowen v. First Family Fin. Servs., Inc.*, the court held that the plaintiff must show that she "(1) exercised in good faith (2) a right under the Consumer Credit Protection Act, and (3) as a result, the creditor discriminated against [them] with respect to the credit transaction." 233 F.3d 1331, 1335 (11th Cir. 2000); *See* 15 U.S.C. § 1691(a)(3) ("It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction because the applicant has in good faith exercised any right under the Consumer Credit Protection Act [15 U.S.C. § 1601][.]").

Plaintiff claims Lockwood retaliated against her because she obtained the name of the appraiser (Steinley) and sued the appraiser. Doc. 1 at 14. She alleges that because Lockwood did not tender the closure statement, she was then blocked from receiving differing funding through a Penfed grant and the HomeStartPlus grant. *Id.* Plaintiff alleges that she suffered an "adverse action" under the ECOA. *Id.* An adverse action is "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).

Plaintiff does not assert enough facts to allege a retaliation claim ECOA. She does not assert facts to show she was exercising a protected right under the Consumer Credit Protection Act. Further, there is still the question whether Plaintiff's application process was made in good faith due to the missing material stated in Gross's letter. *See* 7 CFR 3550.53 (eligibility requirements for the 502 Direct Loan under USDA). Although, the Plaintiff gives examples of how she feels she was discriminated against she does not state enough for a prima facie case of retaliation under 15 U.S.C. 1691(a)(3).

## B. Section 504 of the Rehabilitation Act

Next, Plaintiff asserts that the defendants violated Section 504 of the Rehabilitation Act. Doc. 1 at 15. The Rehabilitation Act states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Under the Rehabilitation Act a qualified individual with a disability is:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, *meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.*

42 U.S.C. § 12131(2) (emphasis added). Here, Plaintiff applied for a section 502 Direct Loan program through the USDA. Plaintiff claims that she is physically handicapped and "[t]here is no dispute that Plaintiff and her sister collectively qualified for participation in the single housing section 502 direct loan program." Doc. 1 at 16.

This Court finds that Plaintiff has not shown she meets the definition of a "qualified individual with a disability" under section 504 of the Rehabilitation Act. This definition requires that the individual meet the "essential eligibility requirements for the receipt of services[.]" Because Plaintiff submitted Gross's letter which challenges her eligibility for the program she has not established that she is a "qualified individual with a disability" and her claims under Section 504 of the Rehabilitation Act are dismissed for failure to state a claim.[8]

## C.    The Fourteenth Amendment Equal Protection Clause Claims Against Defendants Gross, Lockwood, and Steinley

Plaintiff claims that defendants Gross, Lockwood, and Steinley violated the Equal Protection Clause of the Fourteenth Amendment. Doc. 1 at 16. However, Plaintiff's reliance on the Fourteenth Amendment is misplaced. Section 1 of the Fourteenth Amendment provides that "No *State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any *State* . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1 (emphasis added). The Fourteenth Amendment, thus "by its very terms" applies only to state, rather than federal, action. *United States v. Morrison*, 529 U.S. 598, 621 (2000); *see also Russell v. Hug*, 275 F.3d 812, 822 (9th Cir. 2002) (explaining that the Privileges or Immunities Clause of the Fourteenth Amendment

---

[8] This Court notes that Section 504 of the Rehabilitaiton Act does not authorize individual liability. *Brotherton v. Hill*, 2013 WL 122698, at *1 (E.D. Ark. filed Jan. 9, 2013) (citing *Damron v. Nortth Dakota Commissioner of Corrections*, 299 F.Supp.2d 960, 979 (D.N.D. 2004), aff'd, 127 Fed. App'x 909 (8th Cir. 2005) (non-precedential)).

16

"applies in terms only to actions taken by states, not to those . . . taken by the federal government."). Lockwood and Gross are federal actors as they work for a federal agency, the USDA. Accordingly, the Fourteenth Amendment Equal Protection Clause does not apply to the actions of Lockwood and Gross.

Defendant Steinely is a third-party appraiser hired by the federal agency, making him a federal actor. Even if Steinely is not considered to be a federal actor, Plaintiff would have to show that Steinely could be considered a state actor for purposes of the Fourteenth Amendment. The United States Supreme Court has "recognized a number of circumstances in which a private party may be characterized as a state actor[.]" *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 291 (2001); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151 (1970)) (A private party can become a state actor when the state has delegated power that is traditionally exclusive to the state, where there is willful participation of joint unconstitutional activity, and where there is a pervasive entwinement between the state and the party); *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (alleging deprivation must be fairly attributable to state). Even if this Court considers Steinley not to be a federal actor, Plaintiff has not established that the Court should consider Steinley as a state actor. Accordingly, Plaintiff's Fourteenth Amendment claims are dismissed for failure to state a claim.

### D.   *Ex parte Young* Claims Against Defendant Gross

Next, Plaintiff contends she can bring claims against Gross based on the doctrine established in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). Doc. 1 at 17. The Eighth Circuit has held that "[t]he Eleventh Amendment generally bars suits by private citizens against a state in federal court. However, state officers who 'are clothed with some duty

in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce . . . an unconstitutional act . . . may be enjoined . . . from such action." *Balogh v. Lombardi*, 816 F.3d 536, 544 (8th Cir. 2016) (quoting *Ex parte Young, 209 U.S. at 155-56*) (internal citation omitted). Defendant Gross is a federal employee, she is the State Director of the USDA Rural Development Office in South Dakota. This Court cannot reasonably conclude that Plaintiff has set forth facts that allege a cause of action under *Ex parte Young*, thus, her claims are dismissed for failure to state a claim.

## E.     Fair Housing Act

Lastly, Plaintiff alleges a violation of the Fair Housing Act. The Eighth Circuit has held that to establish a prima facie case for a FHA claim the plaintiff "demonstrate that (1) she was a member of a protected class, (2) she applied for and was qualified for a loan with the [Department], (3) the loan was rejected despite her qualifications, and (4) the [Department] continued to approve loans for applicants with similar qualifications." *Rowe*, 289 F.3d at 535 (applying the same test to show a prima facie case under ECOA and FHA).

Because the Eighth Circuit has applied the same prima facie test for general claims under the FHA and ECOA, Plaintiff's FHA claim is dismissed for the same reasons. Plaintiff has failed to show that she was qualified for the loan given the "numerous discrepancies throughout [her] application documents and [for providing] conflicting or ambiguous information[.]" Doc. 1-1 at 30. Further, Plaintiff fails to allege facts that support the fourth factor when she alleges "that GROSS will then intentionally deplete the funding amounts to another borrower to put it beyond HOLLI and MARTI's reach." Doc. 1 at 9. This is a speculation by the Plaintiff and she has not asserted facts that show this scenario actually happened.

### ii. Failure to Accommodate

Plaintiff claims the defendants "refused to accommodate a timely appraisal date knowing that a grant would be made unavailable to the disabled household." Plaintiff cites to 42 U.S.C. § 3604(f)(1-2) which makes it a violation:

> (1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
>   (A) that buyer or renter, [;]
>   (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>   (C) any person associated with that buyer or renter.
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
>   (A) that person; or
>   (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>   (C) any person associated with that person.

Plaintiff alleges that because Steinley promised to perform his duties by a certain date and failed to do so that this led to her inability to secure a grant. Doc. 1 at 19. Plaintiff does not allege facts that show that this denial was because of her "handicap[.]"

Plaintiff also alleges that the "failure to sell a home to a disability needs trust establishes not only a violation of an accommodation rule" of 42 U.S.C. § 3604(f)(3)(B). Section 3604 f(3)(B) states "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Again, Plaintiff has alleged a bare assertion that she was discriminated against when he failed to perform his appraisal on time. Plaintiff does not assert that these actions were taken because of her disability.

### iii.    Retaliation

Plaintiff alleges that defendants Gross, Lockwood, and Steinley have retaliated against her in violation of 42 U.S.C. § 3617. The FHA also prohibits retaliation for the exercise of rights granted under the FHA. 42 U.S.C. § 3617 ("[I]t is unlawful to coerce, intimidate, threaten, or interfere with an person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" section 3603, 3604, 3605, or 3606 of this title.) *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363-364 (8th Cir. 2003) (citing *Sherman v. Runyon*, 235 F.3d 406, 409-10 (8th Cir. 2000)).

Plaintiff asserts her protected activity was her submitting a Federal Tort Claims Act "for 95 petition and filing a state smaller claims case regarding the entire obstructed process, is engaging in protected petitioning activities." Doc. 1 at 20. In order to state a prima facie case for retaliation under the FHA, the protected activity must be a right granted or protected by 42 U.S.C. §§ 3603, 3604, 3605, or 3606. *See Neudecker*, 351 F.3d at 363-364. The protected activity which Plaintiff states does not assert a prima facie case of retaliation under the FHA. Accordingly, Plaintiff's claims under the FHA are dismissed for failure to state a claim.

## IV.    In the Alternative to Joinder of Kevin Conner/Motion to Sever

Plaintiff moves to sever her claims against Kevin Conner and have the Court waive her filing fees. Doc. 73. This Court has never allowed Kevin Conner to be joined as a defendant, even if it had, this Court cannot waive the filing fees because a filing restriction has been placed upon Plaintiff. *See Noble v. Am. Nat'l Prop. & Cas. Inc. Co.*, 297 F.Supp. 3d 998, 1013 (D.S.D. 2018) (stating "A. At the time of the filing of any pleading Ms. [Lundahl] has prepaid in full the applicable filing fee required by the Clerk of Court[.]" Thus, this Court cannot waive her filing fee

and her "Alternative to Joinder of Kevin Conner"/motion to sever (Doc. 73) and motion for joinder (Doc. 70) is denied.

IT IS ORDERED:

1. That the federal defendants' (Gross, Lockwood, USDA) motion to dismiss, Doc. 38, is granted.

2. That the federal defendants' (Gross, Lockwood, USDA) motion to strike, Doc. 47, is granted.

3. That Plaintiff's motion for joinder, Doc. 70, and in the alternative motion to sever, Doc. 73, is denied.

4. Defendant, Craig Steinley's motion to dismiss, Doc. 86, is granted.

5. That Plaintiff's complaint is dismissed without prejudice.

6. Because all of the defendant' motions to dismiss were granted and Plaintiff's case is dismissed without prejudice, the pending motions in this case, Docs. 46, 63, 75, 79, 92, and 99, are denied as moot.

Dated this 26th day of February, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK